**STATE of Iowa, Appellee,**

v.

**Tom L. BECKER, Appellant.**

**STATE of Iowa, Appellee,**

v.

**Todd J. BECKER, Appellant.**

**No. 88–1173.**

Supreme Court of Iowa.

July 18, 1990.

Michael E. Houser of Berkland Law Office, Belmond, for appellants.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., Nathaniel Hsieh, Student Intern, and Bridges A. Chambers, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and LAVORATO, JJ.

CARTER, Justice.

Defendants, Tom L. Becker and Todd J. Becker, have appealed from a judgment of conviction for possession with intent to deliver a schedule I and schedule II controlled substance in violation of Iowa Code section 204.401(1)(b) (1987). They assert that (a) evidence seized from their person and from an automobile in which they were traveling

should have been suppressed and (b) use of such evidence against them at trial is grounds for reversal of their convictions.

The court of appeals concluded that evidence seized in an investigatory detention of the passenger, Tom L. Becker, after the driver, Todd J. Becker, was stopped for speeding, should have been suppressed and that this error required a reversal as to both defendants. We granted further review of the court of appeals decision. Upon considering the arguments advanced by the parties, we conclude that the court of appeals was correct in holding that the investigatory stop of the passenger was not based on reasonable suspicion and that evidence thus obtained should have been suppressed. Although we agree that this conclusion requires a reversal of the conviction of defendant Tom L. Becker, we disagree that this unwarranted intrusion on the passenger's fourth amendment rights taints the conviction of the driver, Todd J. Becker. Consequently, we vacate the judgment of the court of appeals and affirm the conviction of defendant Todd J. and reverse the conviction of defendant Tom L. Becker.

The record reflects the following facts concerning defendants' arrest. On April 4, 1987, Iowa State Patrol Trooper Howard Hollander stopped a car driven by defendant Todd Becker for traveling sixty-seven miles per hour in a fifty-five mile-per-hour zone. The state trooper approached the vehicle from the passenger's side and ordered the driver and the passenger, defendant Tom Becker, to get out of the car and identify themselves.

The trooper testified at trial that he frequently asks occupants of vehicles to get out of the vehicle for his own safety. He also explained that he does so for the purpose of (1) identifying the occupants of the vehicle to determine whether there are any outstanding warrants for their arrest; (2) seeing if any beer cans, drug paraphernalia, or other instrumentalities of criminal conduct fall out; and, in some instances, (3) conducting a search for weapons. The trooper testified that he has done this for over ten years in approximately forty percent of his stops. He explained that his

decision to ask occupants to get out of a car during a traffic stop depends on several factors, including the age, sex, and number of occupants in the vehicle; their manner of dress; and their physical appearance.

Trooper Hollander indicated in his testimony that his determination on how to proceed in these situations is based upon "what he feels is right" and upon "gut instinct." Although at one point in his testimony he did refer to concerns for his personal safety, these comments were not case specific as to the vehicle stop involved in the present case.

When passenger Tom Becker exited the vehicle, Trooper Hollander noticed the bottom of a sheath or holster sticking out from underneath Tom's leather jacket. Believing that the sheath contained a knife which was probably longer than three inches in length (and therefore violative of Iowa Code section 724.4), he examined the sheath and removed the knife. Trooper Hollander then searched Tom for weapons and felt a thin, flat object in his coat pocket, which, when extracted and examined, turned out to be a cigarette case containing marijuana cigarettes. The trooper then directed the driver, Todd Becker, to empty his pockets. While the driver was doing so, the trooper observed him attempting to conceal a small brown vial. Upon examining the vial, the trooper discovered it contained a white powdery substance which he suspected to be contraband and which was later revealed to be methamphetamine.

The trooper searched the passenger compartment of the car for weapons and drugs. He found another knife and another cigarette case containing marijuana cigarettes in the glove compartment. Trooper Hollander then requested that defendants open the trunk of the vehicle. Driver Todd Becker did so and offered to show the trooper the contents of the tool box contained therein. When asked by the trooper to open the suitcase in the trunk, however, the driver refused. Both men were then placed under arrest. A subsequent search of the suitcase conducted pursuant to a search warrant revealed fifteen pounds of

marijuana and four ounces of amphetamines.

Defendants were charged jointly with one count each of possession with intent to deliver schedule I and II controlled substances in violation of Iowa Code section 204.401(1)(b) (1987). Prior to trial, the defendants filed a joint motion to suppress evidence based on the alleged fourth amendment violations which are the subject of this appeal. That motion was denied. The defendants' cases were thereafter jointly tried to the court, and both were found guilty as charged.

In seeking to overturn the decision of the court of appeals, the State urges that the trooper was entitled to order the passenger out of the car for the same reasons that justified ordering the speeding driver out of the car in *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336–37 (1977). It seeks to buttress this argument by reference to language in *State v. Eis*, 348 N.W.2d 224 (Iowa 1984), which states "[n]o principled basis exists for distinguishing between privacy rights of passengers and drivers in a moving vehicle." *Id.* at 226.

We believe the State's argument misses the point. The language in *Eis* equating the privacy rights of passenger and driver when a vehicular stop has occurred was within the context of upholding the standing of a passenger to mount a constitutional challenge to an illegal stop of a vehicle driven by someone else. The case merely held that if a vehicle is illegally stopped both the driver and the passenger may challenge either directly or through a fruit-of-the-poisonous-tree argument any incriminating evidence obtained as a result of the initial stop.

In the present case, the intrusion on the passenger which the court of appeals determined to have been unwarranted occurred after the initial stop. Nothing in either *Eis* or *Mimms* suggests that the privacy rights of the driver and passenger are the same at that stage. The pronouncements in *Mimms* concerning enhancement of the officer's safety were within the context of action which might be taken against a driver known to the officer to have violated the traffic laws. A person in that position is, in many states, including Iowa, technically subject to full custodial arrest. *See* Iowa Code § 805.1(6) (1989). To the extent the officer elects to temporarily pursue a lesser intrusion, he has the right to condition that election on certain aspects of detention and search which are conducive to the officer's safety. *See* Iowa Code § 805.1(4) (1989) (issuance of citation in lieu of arrest or in lieu of continued custody does not affect the officer's authority to conduct an otherwise lawful search).

■ The situation of the passenger, on the other hand, is entirely different. The fact that the driver was speeding authorizes the officer to stop the vehicle in which the passenger is riding. The resulting intrusion on the passenger which flows from the initial stop is an unavoidable consequence of action justifiably taken against the driver. Further intrusion on the passenger is not justified, however, unless some articulable suspicion exists concerning a violation of law by that person, or unless further interference with the passenger is required to facilitate a lawful arrest of another person or lawful search of the vehicle.

Support for our conclusions is found in the following cases from other jurisdictions which have concluded that, absent some articulable suspicion vis-a-vis the passenger, the *Mimms* rationale does not authorize removal of the passenger from the vehicle. *State v. Williams*, 366 So.2d 1369 (La.1978); *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988); *Johnson v. State*, 601 S.W.2d 326 (Tenn.Crim. App.1980). The decision in *People v. McLaurin*, 508 N.Y.S.2d 429, 120 A.D.2d 270 (1986), upon which the State relies does not extend *Mimms* to passengers in all routine traffic stops. There was a showing in that case of articulable suspicion vis-a-vis the passenger.

■ The court of appeals was correct in concluding that Tom Becker's fourth amendment rights were violated when he was ordered from the vehicle. At the time this was done, there was no articulable

suspicion of wrongdoing on his part or any need to move him in order to facilitate arrest of the driver or search of the vehicle. As to Tom Becker, such violation required suppression of evidence obtained after he was ordered from the car. We disagree, however, with the action taken by the court of appeals with respect to the driver's conviction. In order for the driver to successfully urge suppression of the evidence taken from his person and from his automobile, he must tie that seizure to a violation of his own fourth amendment rights.

Two determinations must be made before a fourth amendment violation is found. One is that the driver had a legitimate expectation of privacy in the particular area searched or the particular object seized. *Eis*, 348 N.W.2d at 226. The second is that the State unreasonably intruded into the protected interest. *Id.; Harris v. United States*, 331 U.S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399, 1405 (1947).

In the present case, defendant Todd Becker, who was driving the car, had a legitimate expectation of privacy in the area searched and those objects seized from his person and from his car. *United States v. Jeffers*, 342 U.S. 48, 52–54, 72 S.Ct. 93, 95–96, 96 L.Ed. 59, 64–65 (1951); *State v. Osborn*, 200 N.W.2d 798, 803–04 (Iowa 1972); *State v. Shank*, 191 N.W.2d 703, 705 (Iowa 1971). Given the totality of the circumstances, however, we do not believe that the State unreasonably intruded into these protected interests.

The original stop of his vehicle was not a fourth amendment violation because the trooper had probable cause to believe that the driver had been speeding. In determining whether the officer had such reasonable suspicion as would justify the subsequent directive that Todd Becker empty his pockets and the subsequent search of the vehicle's interior, we believe consideration may properly be given to the knowl-

edge which the trooper had gleaned through the illegal detention of Tom Becker.[1] Defendant Todd Becker has no standing to base constitutional challenges on violations of the fourth amendment rights of other persons. *See State v. Sanders*, 282 N.W.2d 770, 772 (Iowa App.1979). Such lack of standing not only precludes a right to suppress evidence illegally obtained from other persons, but it also precludes a fruit-of-the-poisonous-tree argument based on knowledge obtained through violation of another person's fourth amendment rights.

This was made clear in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In that case, two defendants were tried together. Narcotics seized from a third party were held inadmissible against one defendant because they were the product of statements made by him at the time of an illegal arrest. But, these same narcotics were found to be admissible against a codefendant because "the seizure of this heroin invaded no right of privacy of person or premises which would entitle [him] to object to its use at his trial." *Id.* at 492, 83 S.Ct. at 419, 9 L.Ed.2d at 458; *see also Alderman v. United States*, 394 U.S. 165, 173–74, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176, 186–87 (1969).

For the reasons stated, we vacate the judgment of the court of appeals. The conviction and resulting sentence of defendant Tom Becker is reversed and the case remanded for a new trial as to him. The judgment of conviction and sentence of defendant Todd Becker is affirmed.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

---

1. The information which the trooper obtained from the passenger, Tom Becker, gave the trooper reasonable suspicion of joint criminal activity which would justify a *Terry* search of Todd Becker's pockets. *See United States v. Hardnett*, 804 F.2d 353, 358 (6th Cir.1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). Evidence obtained from that *Terry* search gave the trooper probable cause for an arrest of Todd Becker and search of the vehicle. *State v. Sanders*, 312 N.W.2d 534, 538–39 (Iowa 1981); *State v. Harvey*, 242 N.W.2d 330, 338–39 (Iowa 1976).